IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. HENG SHI, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | No.: 16-cv-5061 |
| | : | |
| CHILDREN'S HOSPITAL OF | : | |
| PHILADELPHIA, et al., | : | |
|     Defendants. | : | |

## MEMORANDUM

**SITARSKI, M.J.**                                                                                      December 6, 2017

      This is an employment discrimination case. Plaintiff Dr. Heng Shi ("Plaintiff") filed a Motion to Compel the production of additional written discovery and to re-depose a non-party witness.[1] [Pl.'s Mot. to Compel, ECF No. 13, ("hereinafter "Pl.'s Mot."), and Memorandum of Law, ECF No. 13-1 (hereinafter "Pl's Memo. of Law")]. Defendant Children's Hospital of Philadelphia ("Defendant" or "CHOP") has filed a response. [Def.'s Resp., ECF No. 19 (hereinafter "Resp.")]. For the reasons discussed below, Plaintiff's motion will be granted in part, and denied in part.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

      The Court writes primarily for the parties, who are familiar with the background and procedural posture of the case. Plaintiff worked for sixteen years as a Mass Spectrometrist Specialist ("Mass Specialist") in the Chemistry Laboratory of CHOP. (Compl. ECF No. 1 at ¶¶ 7-8). She was terminated on November 17, 2015. (*Id*. at ¶ 57). According to CHOP, all Mass

---

    [1] This motion has been referred to the undersigned by the Honorable C. Darnell Jones, II in accordance with 28 U.S.C. §636(b)(1)(A). (Order, ECF Docket No. 16).

Specialist positions in the Chemistry Lab were eliminated due to an organizational restructuring that consolidated all mass spectrometry work in the Metabolic Laboratory. (Resp. 2-3). This reorganization allegedly led to the termination of Plaintiff and the other Mass Specialist in the Chemistry Lab, a Caucasian male named Mark Eisman. (*Id*.). In the months after her termination, Plaintiff applied for job openings, allegedly created by the elimination of her position in the Chemistry Lab, but Plaintiff was not hired for any of these open positions. (Compl. ¶¶ 68, 70; Affidavit of Robert F. Donahue, Ex. A, ¶7, Pl. Memo. of Law, ECF No. 13-3).

Plaintiff thus brought this action against her former employer CHOP and two individual defendants, Vipul Shah and Tracey Polsky, asserting claims of discrimination based on national origin and race, hostile work environment, harassment, retaliation for making internal complaints and filing charges with the Equal Employment Opportunities Commission, and retaliation based on CHOP's alleged failure to rehire her to other positions for which she applied after her separation. (Compl.).

Discovery has proceeded, with the parties conducting depositions of current and former CHOP employees, including Plaintiff's former supervisor, Theresa Vaccaro ("Vaccaro"). In addition, Defendant produced nearly 6,000 pages of documents responsive to Plaintiff's multiple written discovery requests. Defendant's production included responsive emails with attachments such as Excel spreadsheets.[2] Specifically, Defendant produced Excel spreadsheets for certain fiscal years documenting the budget of all CHOP laboratories, listing all employee

---

[2] The Excel spreadsheets at issue were not themselves identified as responsive to Plaintiff's discovery requests. Instead, the spreadsheets were attached to emails marked as responsive during Defendant's electronic discovery searches. (Resp. 5-6, 8; CHOP Resp. to Third Request for Documents Nos. 2-4, Ex. C to Pl. Memo. of Law, ECF No. 13-3 at 19-20).

2

terminations in all CHOP laboratories, and identifying all open positions across all CHOP Departments. (Bates Numbered Documents CHOP 1390, CHOP 2328, CHOP 2519).[3]

In her instant motion, Plaintiff seeks to compel: (1) production of similar Excel spreadsheets for multiple fiscal years before and after her termination; and (2) the re-deposition of Theresa Vaccaro to question her further about the terms of her retirement from CHOP, and the specific details of the severance package she received upon retirement. As explained below, I find that Plaintiff is entitled to a limited number of additional spreadsheets relevant to the issues and time period at hand, but is not entitled to re-depose Ms. Vaccaro.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure allow parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Information within the scope of discovery does not need to be admissible at trial to be discoverable. *Id.* While generally liberal, permissible discovery is not without limitations and should not serve as a fishing expedition. *Upshaw v. Janssen Research & Development, LLC*, No. 11-7574, 2014 WL 1244047, at * 3 (E.D. Pa. Mar. 26, 2014).

---

[3] The parties did not provide copies of the Excel spreadsheets identified as CHOP 1390, CHOP 2328, and CHOP 2519. According to Plaintiff, these spreadsheets "contain very helpful information" and she "wants the same information for other fiscal years." (Pl. Mot. 6).

Pursuant to Rule 37, a party who has received evasive or incomplete answers to discovery requests may move for an order compelling discovery. *See* Fed. R. Civ. P. 37(a)(1), (4). The moving party bears the initial burden of showing that the requested discovery is relevant. *Morrison v. Phila. Housing Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). The burden then shifts to the party opposing discovery to articulate why discovery should be withheld. *Id.* The party resisting production must demonstrate to the court "that the requested documents either do not come within the broad scope of relevance defined pursuant to Fed. R. Civ. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Young v. Lukens Steel Co.*, No. 92-6490, 1994 WL 45156, at *2 (E.D. Pa. Feb. 10, 1994) (quotations and citation omitted).

## III. DISCUSSION

### A. Excel Spreadsheets (Plaintiff's Third Request for Documents Nos. 2 – 4)

Plaintiff firsts asks the Court to compel Defendant to produce Excel spreadsheets for additional years reflecting data in three categories: (1) Job Requisition (Open Positions); (2) CHOP budget information for its main campus; and (3) employee turnover by month at CHOP's main campus. (Pl. Memo of Law 6-7). I will address each category in the order discussed by the parties.

#### 1. Job Requisition (Open Positions) Spreadsheets – Request No. 4

Defendant produced a document identified as CHOP 1390, a spreadsheet that shows all open positions in all CHOP departments for a period of five fiscal years, ending in June 2015.

(Pl. Memo of Law 6; Resp. 5). Plaintiff, relying on an affidavit from an individual identified as her expert witness, argues that she is entitled to the same information for fiscal years 2016 and 2017 because it relates to her failure to hire claim. Defendant counters that Plaintiff's request is overly broad because CHOP 1390 reflects all open positions in all CHOP departments, encompassing nearly 15,000 workers for the time period covered.

I agree with Defendant that Plaintiff's request is overly broad, as it seeks all open positions in all departments, regardless of whether those positions are related to Plaintiff's tenure, duties, educational background, or expertise as a mass spectrometrist. During her tenure at CHOP, Plaintiff worked in one position (Mass Specialist), and in one department (the CHOP Chemistry Lab). Plaintiff is not entitled to further spreadsheets showing all open positions in all CHOP departments. Nor is the time period after Plaintiff's termination and application for other positions relevant to her claims. However, Plaintiff was terminated in November 2015, and in the "ensuing months," she applied for job openings in CHOP laboratories. (Ex. A, ¶7, Pl. Memo. of Law). Therefore, data related to openings in the Chemistry and Metabolic Labs, and for the positions Plaintiff applied to after her termination, is relevant to her employment claims. Consequently, Defendant shall produce data in the form of CHOP 1390 for open positions in the Chemistry and Metabolic Labs, as well as for the open positions that Plaintiff applied, for fiscal year 2016.[4]

---

[4] Fiscal Year 2016 runs until the end of June 2016, and therefore encompasses the date of Plaintiff's termination and her applications for other positions. Defendant has not argued that production of this limited subset of data in Excel spreadsheet form would be burdensome. Moreover, Defendant avers that CHOP has already produced documents relating to the open positions that Plaintiff applied for in the months after her termination.

## 2. Budget Spreadsheets – Request No. 3

Defendant also produced CHOP 2328, which contains budgets for more than 130 CHOP laboratories on its main campus. Plaintiff seeks budget information in the same format for three additional fiscal years, 2015 through 2017. Defendant responds that there are no stand-alone budget documents for each year; instead, budget data exists in a database, from which various reports can be run. Defendant argues that Plaintiff's request is overbroad because it seeks budgetary information for all laboratories for a period of time beyond her termination.

I agree with Defendant that Plaintiff's request is overly broad. Plaintiff worked in one position in one CHOP laboratory, yet she seeks budgetary information for all CHOP laboratories for two years after her separation date. Budgetary data for all laboratories goes well beyond the scope of Plaintiff's claims.

Plaintiff argues that budget information is relevant to "show how much money CHOP may have lost in the termination of the Mass Specialists" and that her firing "caused great disruption in the Chemistry and Metabolic Labs." However, I fail to see how the budget information for all CHOP laboratories is relevant to the elimination of Plaintiff's position in one laboratory. Only the Mass Specialist positions are at issue here; thus, the budgetary information related to the Chemistry and Metabolic Laboratories are relevant and proportional to the issues in this case. Therefore, CHOP is directed to produce budgetary data for the Chemistry and Metabolic Laboratories for fiscal years 2015 and 2016.[5]

---

[5] During a telephonic "meet and confer" conference, Defendant offered to provide the budget information for the Chemistry and Metabolic Laboratories, which appears to coincide with what this Court is ordering produced. (Ex. 1, Resp., ECF No. 19-1). The Court recognizes the ordered production will go beyond Plaintiff's termination date. However, the question at this juncture is whether the information is discoverable, not admissible.

### 3. Employee Turnover Spreadsheets – Request No. 2

Defendant also produced CHOP 2519, which shows employee turnover by month – voluntary and involuntary - in all CHOP laboratories for fiscal year 2014. Plaintiff seeks to compel the production of nine additional years of data in order to show that involuntary layoffs at CHOP are "extremely rare." (Pl. Memo. of Law 7). She also argues that spreadsheets of this nature will be "a great time saver for the Court, be simple to understand for the jury, and will be a great visual." (*Id*.). Plaintiff's arguments are not persuasive. Plaintiff's request is overly broad as it seeks data related to all CHOP laboratories, not just the Chemistry Lab, Plaintiff's employing unit. *See Bates v. Tandy Corp.*, No. 03-5519, 2005 WL 1162502, at *1 (E.D. Pa. May 17, 2005) (discovery usually limited to information about employees in the same department or office absent a showing of a more particularized need for, and the likely relevance of, broader information). Moreover, I disagree with Plaintiff's contention that data related to employee turnover in an entire hospital for a period of nearly a decade, will "simplify" the issues presented by Plaintiff's claims. The issue in this case is whether Plaintiff was improperly terminated from her Mass Specialist position in the Chemistry Laboratory when all mass spectrometry work was allegedly consolidated in the Metabolic Laboratory. Therefore, employee turnover in those two Laboratories is relevant to Plaintiff's claims. I will order Defendant to provide layoff data for the Chemistry and Metabolic Laboratories for fiscal years 2009-2014.[6] Recognizing that discoverability does not equate with admissibility, I will also order Defendant to produce this same information for fiscal years 2015 and 2016 to include the date of Plaintiff's termination in

---

[6] During the telephonic "meet and confer" discussed in note 5, *supra*., Defendant also agreed to provide Plaintiff with a formal discovery response that confirms the number of layoffs in the Chemistry and Metabolic Laboratories for the period of fiscal year 2009 through fiscal year 2014.

7

November of 2015.

B. **Deposition of Theresa Vaccaro**

Plaintiff also seeks to reopen the deposition of non-party Theresa Vaccaro, a former CHOP employee who supervised Plaintiff in the Chemistry Lab. Ms. Vaccaro appeared, unrepresented, on September 28, 2017, for a deposition noticed by Plaintiff. (Ex. 2, Resp. ECF No. 19-2). Ms. Vaccaro testified that upon retiring from CHOP after 42 years of employment, she received a confidential severance package, which included a monetary sum. (Dep. of Theresa Vaccaro, Ex. E at pp.11-12, 152-53,[7] Pl. Memo of Law, ECF No. 13-3). Upon questioning by counsel for Plaintiff, Ms. Vaccaro refused to specify the amount of her severance package, on the grounds that it was confidential. (*Id*. at 153, 155).

Plaintiff seeks to re-depose Ms. Vaccaro, to question her about her confidential severance package agreement with CHOP. Plaintiff argues that Ms. Vaccaro should be forced to provide specific details of her confidential severance package, including the specific monetary amount received by Ms. Vaccaro because it may show that Ms. Vaccaro had a "financial incentive to cooperate with CHOP" in this litigation. (Pl's Memo of Law 8). I do not agree that Plaintiff is entitled to this information. Plaintiff questioned Ms. Vaccaro about her retirement from CHOP and whether her severance agreement required her to testify in this litigation. (*Id*. at 11-12, 148-156). In response to questioning at her deposition, Ms. Vaccaro denied that she received money as part of her severance package in exchange for testifying on CHOP's behalf in this case. (*Id.* at 150-51). In addition, there is no evidence that Ms. Vaccaro left her employment at CHOP under circumstances similar to Plaintiff. Nor has Plaintiff explained how Ms. Vaccaro's

---

[7] The citations refer to the page numbers of Ms. Vaccaro's deposition transcript.

retirement and/or the confidential severance package she received relate in any way to Plaintiff's claims.[8] To the contrary, Ms. Vaccaro herself testified under oath that her "situation has nothing - - no bearing on what's happened [to Plaintiff]," "is totally separate," and "not relevant to this case." (*Id*. at 154-155). Accordingly, Plaintiff's motion to compel the reopening of Ms. Vaccaro's deposition is denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel is granted in part as to the excel spreadsheets, and denied as to the re-opening of the deposition of Theresa Vaccaro.

An appropriate Order follows.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE

---

[8] To the extent that Plaintiff would attempt to "impeach" Ms. Vaccaro based on perceived bias, the exact amount of Vaccaro's severance package is not necessary to do so.